UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

Next Innovations, Ltd.,

                    Plaintiffs,

         vs.                              R E P O R T       A N D
                                          RECOMMENDATION

Iron Stop, Inc., and
Ron Spinks,

                    Defendants.          Civ. No. 05-1217 (JRT/RLE)

*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

I.  Introduction

This matter came before the undersigned United States Magistrate Judge

pursuant to a special assignment, made in accordance with provisions of Title 28

U.S.C. §636(b)(1)(B), upon the Plaintiff's Motion to Dismiss the Defendants' and

Counterclaim Plaintiffs' (hereinafter, "Defendants'") Counterclaims.  A Hearing on the

Motion was conducted on October 27, 2005, at which time, the Plaintiff appeared by

S. Jamal Faleel, and Kurt J. Niederlucke, Esqs., and the Defendants appeared by Dean

C. Eyler, Esq.

For reasons which follow, we recommend that the Plaintiff's Motion to Dismiss the Defendants' Counterclaims be denied.

## II.  Factual Background

The Plaintiff commenced this action under the Copyright Act, Title 17 U.S.C. §101, et seq. alleging that the Defendants are infringing on a number of its copyrighted designs.  Specifically, the Plaintiff alleges that the Defendants are manufacturing, selling, and distributing, products known as "Wind Spinners," that are substantially similar to copyrighted works identified as "HUMMINGBIRD," "CROSS," "SUN FACE," "DOLPHIN," "BASS," "FIREMAN," and "DEER."  Amended Complaint, at ¶¶8 and 9.

Along with its Answer to the Plaintiff's Amended Complaint, the Defendants filed Counterclaims for tortious interference with a contract, for tortious interference with  prospective contractual relations, and for violations of the Minnesota Deceptive Trade Practices Act ("MDTPA"), Minnesota Statutes Section 325D.45.  In support of those claims, the Defendants allege that, simultaneous with its commencement of the infringement action, the Plaintiff transmitted threatening letters to a number of independent sales representatives, retailers, and advertisers, who conduct business

with the Defendants (collectively, the "Marketers").   <u>Amended Answer and Counterclaim ("Counterclaim")</u>, at p. 7, ¶3.

Allegedly, each letter was attached to the Plaintiff's Complaint in this case, and threatened to join each Marketer, as a Defendant in this lawsuit, if the Marketer did not immediately refrain from marketing and selling the allegedly infringing "Wind Spinners." <u>Id.</u> The Defendants also allege, "upon information and belief," that the Plaintiff made disparaging remarks about the Defendants, in oral communications with the Marketers, that exceeded the scope of the allegedly infringing "Wind Spinners," <u>id.</u>, at ¶5, and that, as a result of the Plaintiff's conduct, the Marketers have stopped marketing and/or selling the "Wind Spinners," which are alleged to infringe upon the Plaintiff's copyrights. <u>Id.</u> at ¶4.

## III.  <u>Discussion</u>

A.   <u>Standard of Review</u>.   "When reviewing a Rule 12(b)(6) dismissal for failure to state a claim, we look only to the facts alleged in the complaint and construe those facts in the light most favorable to the [nonmoving party]." <u>Riley v. St. Louis County</u>, 153 F.3d 627, 629 (8th Cir. 1998), cert. denied, 525 U.S. 1178 (1999), citing <u>Double D Spotting Serv., Inc. v. Supervalu, Inc.</u>, 136 F.23d 554, 556 (8th Cir. 1998); see also, <u>Maki v. Allete, Inc.</u>, 383 F.3d 740, 742 (8th Cir. 2004).   In addition, all

reasonable inferences, from the facts alleged in the Complaint, must also be drawn in favor of the nonmoving party. <u>Maki v. Allete, Inc.</u>, supra at 742. "A complaint shall not be dismissed for its failure to state a claim upon which relief can be granted unless it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of a claim entitling him to relief." <u>Young v. City of St. Charles</u>, 244 F.3d 623, 627 (8th Cir. 2001), citing <u>Breedlove v. Earthgrains Baking</u>, 140 F.3d 797, 799 (8th Cir. 1998); see also, <u>Maki v. Allete</u>, supra at 742; <u>Helleloid v. Independent School Dist. No. 361</u>, 149 F. Supp.2d 863, 866-67 (D. Minn. 2001).

"Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." <u>Young v. City of St. Charles</u>, supra at 627, citing <u>Neitzke v. Williams</u>, 490 U.S. 319, 326-27 (1989). "To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and not merely legal conclusions." <u>Id.</u>, citing <u>Springdale Educ. Ass'n v. Springdale Sch. Dist.</u>, 133 F.3d 649, 651 (8th Cir. 1998).

A Motion to Dismiss can be converted to a Rule 56 Motion for Summary Judgment if "matters outside the pleadings are presented to and not excluded by the court." <u>Rule 12(b), Federal Rules of Civil Procedure</u>. However, a Court may

consider some information, which is not contained within the Complaint -- such as materials that are part of the public record, and materials that are necessarily embraced by the pleadings -- without transforming the Motion into one for Summary Judgment. Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999); see, Enervations, Inc. v. Minnesota Mining and Manufacturing Co., 380 F.3d 1066, 1069 (8th Cir. 2004); Stahl v. United States Department of Agriculture, 327 F.3d 697, 700 (8th Cir. 2003).  Since our decision rests entirely upon the pleadings, materials within the public record, and materials that are necessarily embraced by the pleadings, we analyze the Defendants' Motion, under the framework of Rule 12(b)(6), rather than under the regimen of Rule 56.

B.  Legal Analysis.  The Plaintiff has moved to dismiss the Defendants' Counterclaims because:  1) its conduct, as a copyright holder, in notifying infringers of its copyrights, is not actionable under Minnesota tort law; and 2) the notices, which were sent by the Plaintiff to the Marketers, were protected under the Noerr-Pennington doctrine, as conduct ancillary to litigation.  See, Eastern R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 136 (1961); United Mine Workers v. Pennington, 381 U.S. 657, 669-70 (1965).  We address each contention in turn.

1.    <u>The Sufficiency of the Pleadings to State an Actionable Claim</u>.  As

we have noted, the Defendants have alleged claims for tortious interference with a

contract, for tortious interference with prospective contractual relations, and for

violations of the MDTPA.  Under Minnesota law, "'[t]o establish a prima facie case

of tortious interference with a contract, a plaintiff must show:  (1) the existence of a

contract; (2) knowledge of the contract by the alleged wrongdoer; (3) intentional

procurement of the contract's breach; (4) absence of justification; and (5) damages

caused by the breach.'"  <u>Flora v. Firepond, Inc.</u>, 260 F. Supp.2d 780, 789 (D. Minn.

2003), aff'd <u>sub</u> <u>nom.</u>, <u>Syverson v. Firepond</u>, 383 F.3d 745 (8th Cir. 2004), quoting

<u>Metge v. Central Neighborhood Improvement Association</u>, 649 N.W.2d 488, 500

(Minn. App. 2002); see, <u>Guinness Import Co. v. Desnoes & Geddes, Ltd.</u>, 971 F.

Supp. 401, 412 (D. Minn. 1997), citing <u>Sip-Top, Inc. v. Ecko Group, Inc.</u>, 86 F.3d

827, 832 (8th Cir. 1996).

Similarly, "[t]o establish a claim of tortious interference with a prospective

business relationship, a plaintiff must prove the defendant intentionally committed a

wrongful act which improperly interfered with the prospective relationship."  <u>Hunt v.</u>

<u>University of Minnesota</u>, 465 N.W.2d 88, 95 (Minn.App. 1991), citing <u>United Wild</u>

Rice, Inc. v. Nelson, 313 N.W.2d 628, 633 (Minn. 1982); see, Sip-Top, Inc. v. Ecko Group, Inc., supra at 832.

It is apparent, on the face of the Counterclaim, that the Defendants have alleged each of the elements of a claim for tortious interference with a contract, and for tortious interference with prospective contractual relations. See, Counterclaim, at ¶¶7-17. Nevertheless, the Plaintiff asserts that the factual allegations fail to support the Defendants' conclusory allegations of tortious interference, and has specifically drawn our attention to the absence of any allegation of "bad faith."

While "bad faith," on the part of a tortfeasor, is not a specified element of an action for either a claim for tortious interference with a contract, or for tortious interference with prospective contractual relations, it is often a pertinent consideration in the determination of the viability of such claims. As the Minnesota Court of Appeals recently observed:

> "Justification or privilege is a defense to an action for tortious interference." Nordling [v. Northern States Power Co.], 478 N.W.2d [498, 506 (Minn. 1991)]. Justification is lost, however, if a bad motive is present. Id. In other words, while bad motive or malice may not be an element of the tort of tortious interference, it is often persuasive evidence on whether the defendant's conduct was proper and justified or improper and not justified. Id.

Metge v. Central Neighborhood Improvement Association, supra at 500.

Moreover, "'[o]rdinarily, whether interference is justified is an issue of fact, and the test is what is reasonable under the circumstances.'" <u>Id.</u> at 501, quoting <u>Kjesbo v. Ricks</u>, 517 N.W.2d 585, 588 (Minn. 1994); see, <u>McDonough v. City of Rosemount</u>, 503 N.W.2d 493, 499 (Minn.App. 1993)("The justification or privilege is lost if bad motive is present," and "while [the defendant] may be able to assert this privilege as a legal justification under Minnesota law, this is a fact question not appropriate for summary judgment.").

While the absence or presence of justification is generally a fact issue, Minnesota law also recognizes that a "superior legal right" may defeat a tortious interference claim, as a matter of law.  See, <u>Langeland v. Farmers State Bank of Trimont</u>, 319 N.W.2d 26, 32-33 (Minn. 1982); <u>New Concept Confinement Technology Feeders, Inc. v. Kuecker</u>, 364 N.W.2d 450, 453 (Minn. App. 1985), rev. denied (Minn., May 31, 1985).  In <u>New Concept</u>, the Court granted Summary Judgment, on a tortious interference claim, to a lienholder who had transmitted a number of letters to persons doing business with the debtor, reasoning as follows:

> In this matter, respondents had a lawful justification to pursue the debt owed by [the plaintiff].  The filing of the lien and sending letters containing notice of the lien to parties who may have been affected by the lien was a reasonable and legal method for collection and protection

> of the debt.  The trial court did not err by entering summary
> judgment against [the plaintiff's] cause of action for tortious
> interference with contractual relations.

New Concept Confinement Technology Feeders, Inc. v. Kueckner, supra at 453.

Faced with a similar issue, the Minnesota Supreme Court, in Langeland v. Farmers

State Bank of Trimont, supra at 32-33, explained:

> The general rule is that one has a right to be secure in his
> contracts and to pursue his business free from interference
> from others.  A defendant may avoid liability, however, by
> showing that his actions were justified by a lawful object
> that he had a right to pursue. * * * Since [the defendants]
> acted in furtherance of a superior legal right, [the plaintiffs]
> have no claim against them for wrongful interference.

The Court's analyses in New Concept, and Langeland, is consistent with the rule set

forth in Restatements (Second) of Torts §773, which has been adopted by the

Minnesota Courts, and which provides as follows:

> One who, by asserting in good faith a legally protected
> interest of his own or threatening in good faith to protect the
> interest by appropriate means, intentionally causes a third
> person not to perform an existing contract or enter into a
> prospective contractual relation with another does not
> interfere improperly with the other's relation if the actor
> believes that his interest may otherwise be impaired or
> destroyed by the performance of the contract or
> transaction.

See, Kjesbo v. Ricks, supra at 588; Guerdon Industries, Inc. v. Rose, 399 N.W.2d
186, 188 (Minn. App. 1987).

Here, the Plaintiff maintains that it had the right to notify the Defendants' Marketers concerning its rights, as a copyright holder, arising from their potential infringement of that copyright.

Specifically, the Plaintiff urges that, in the absence of "bad faith," a copyright holder has an absolute right to transmit notifications to non-parties of its copyrights, as well as the potential infringement of the non-party, and that a lack of good faith can only be shown where the communication contains "misstatements or language unsupported by the allegations of the complaint in the pending infringement action," see, On Command Video Corp. v. Columbia Pictures Industries, Inc., 764 F. Supp. 1372, 1374 (N.D. Cal. 1991), or where the copyright holder "engag[ed] in conduct which is totally unrelated or even agnostic to the interest which gave rise to the [copyright holder's] privilege."  See, American Broadcasting Co. v. Maljack Productions, Inc., 34 F. Supp.2d 665, 675-676 (N.D. Ill. 1998).

In Kemp v. Tyson Foods, 2001 WL 391552 at *7 (D. Minn., March 31, 2001), the District Court was persuaded, by similar reasoning, into granting a Motion for Summary Judgment on a tortious interference claim.  There, the tortious interference claim was predicated on cease and desist letters, that were transmitted by the contractual owner of a trademark to both the trademark infringer, and to an entity that

was believed to have entered into a joint business venture with the infringer.  In finding that those letters did not establish a basis for tort liability, the Court reasoned, as follows:

> Plaintiffs fail to set forth sufficient evidence that [the defendant] acted without justification in sending out a cease and desist letter to plaintiffs and [the other party to the contract].  Significantly, there is no wrongful interference with contract where one asserts "in good faith a legally protected interest of his own * * * believ[ing] that his interest may otherwise be impaired or destroyed by the performance of the contract or transaction."  Kjesbo, 517 N.W.2d at 588 (quoting Restatement (Second) of Torts §773 (1979)).
>
> In this case, [the defendant] had at least a good faith belief that its rights were being infringed.  Plaintiffs' contention that [the defendant's] position was so incorrect on the face of the contract documents as to demonstrate bad faith is without merit.  [The defendant] possessed rights to send the letter independent of any contract.  As the registered holder of the LOUIS KEMP trademark for surimi-based seafood products, [the defendant] has the right to prevent others from using marks that would cause confusion in the marketplace.
>
> *     *     *
>
> [The defendant's] rights would reasonably extend to those parties it believed were contributing to infringement of its trademark rights.  See Celotex v. Insulite Co., 39 F.2d 213 (D. Minn. 1930)(patent owner sent cease and desist letters to all parties defendant believed were involved in infringing

> his patent, including agents, jobbers, and dealers in the
> building industry).

<u>Id.</u>

We note, however, that the Court, in <u>Kemp</u>, reached the tortious interference claim only after a contractual construction which allowed the Court to conclude that the letters, there, were sent in "good faith." We have not been presented with a Record, here, which allows the same conclusion under the regime of a Rule 12(b)(6) Motion. Specifically, we are unable to say that the letters were sent in good faith, as we are unable to determine whether the Defendants' products, that are here in contention, violated the Plaintiff's copyrights as a matter of law. Even if we assumed, however, that a showing of good faith supported some form of letter notice to the Marketers, we would still be precluded from recommending a grant of dismissal as to the tortious interference claim.

Reading the Counterclaim in a light most favorable to the Defendants, we conclude that a dismissal, at this preliminary juncture, would be improper. Notably, a review of the demand letters, which were incorporated by reference into the Defendants' Counterclaim, discloses that the letter of June 21, 2005, which was transmitted to Mark A. Johnson, incorrectly asserted that the Defendants' "Wind Spinners" infringed on a copyrighted work identified as "SPLASH." <u>Counterclaim,</u>

at Exh. A.  Moreover, as noted by the Defendants, the demand letters' references to "statutory damages," and to "attorneys fees and costs," could be construed as an overstatement of the Plaintiff's rights under the Copyright Act, since Title 17 U.S.C. §412(2) precludes an award of statutory damages, or attorneys fees, for "any infringement of copyright commenced after first publication of work, but before the effective date of its registration, unless such registration is made within three months after the first publication of the work," and the Plaintiff's copyrights for "CROSS," "DOLPHIN," "HUMMINGBIRD," and "FIREMAN," appear to have been registered more than three months after first publication.  See, Amended Complaint, at Exhs. A, B, D, and F.

Moreover, the Plaintiff's allegedly tortious conduct is not limited to the transmittal of the demand letters.  Rather, the Defendants have alleged, "upon information and belief," that the Plaintiff communicated with the Defendants' Marketers, in conjunction with sending those letters, and that those communications "included disparaging remarks about [the Defendants] beyond the scope of Iron Stop's allegedly infringing 'Wind Spinners.'"  Counterclaim, at ¶5.  Assuming such allegations to be true -- which we are obligated to do at this juncture -- and considering the possibility that the Plaintiff overstated its rights under the Copyright Act, it remains

possible that a Jury could find that the Plaintiff acted in the absence of justification, and therefore, find the Plaintiff liable for tortious interference with a contract, and for tortious interference with prospective contractual relations.[1]

In addition, while the parties do not devote any considerable discussion to the Defendants' MDTPA claim, we find that such a claim has been sufficiently alleged. As noted, because this is a Motion to Dismiss, we must assume that the Plaintiff contacted the Marketers in conjunction with the demand letters, and that it made disparaging comments about the Defendants' products that were beyond the scope of the alleged infringement. Such an allegation is sufficient to state a claim under the MDTPA. See, Minnesota Statutes Section 325D.44, Subdivision 1(8)("A person

---

[1]The Plaintiff has insisted that the Defendants' failure to allege "bad faith" necessitates a dismissal. The argument is unpersuasive, since, under Minnesota law, the absence of justification, rather than the bad faith of the tortfeasor, determines the existence of a viable tortious interference claim. While a "good faith belief," on the part of the tortfeasor, may defeat a claim for tortious interference, the Plaintiff has failed to identify any Minnesota authority for the proposition that a tort complainant must allege "bad faith," in order to assert a viable tortious interference claim, nor has our independent research disclosed any such authority. Taken to its logical end, rather than the "notice pleading" intended by the Federal Rules of Civil Procedure, the Plaintiff's contention would return pleading to an intricate exercise in artful assertions of specific facts so as to anticipate the opponent's potential responses. Except in unusual circumstances, where heightened pleading standards apply -- which plainly are not implicated here -- notice pleading is sufficient.

engages in a deceptive trade practice when, in the course of business * * * the person

* * * disparages the goods, services, or businesses of another by false or misleading

representation of fact."); see also, <u>United Wild Rice, Inc. v. Nelson</u>, 313 N.W.2d 628,

634 (Minn. 1981).  Accordingly, we recommend that the Plaintiff's Motion to Dismiss,

based upon the claimed insufficiency of the Defendants' pleading, be denied.

     2.   <u>The Application of the Noerr-Pennington Doctrine</u>.  The Plaintiff

has also urged that dismissal is proper because its conduct is protected by the <u>Noerr-</u>

<u>Pennington</u> doctrine.  The <u>Noerr-Pennington</u> doctrine arose out of the holding in

<u>Eastern R. Presidents Conference v. Noerr Motor Freight, Inc.</u>, supra, where the

Supreme Court construed the Sherman Act in such a way that it "does not prohibit

* * * persons from associating together in an attempt to persuade the legislature or the

executive to take particular action with respect to a law that would produce a restraint

or a monopoly."  <u>Id.</u> ; accord, <u>United Mine Workers v. Pennington</u>, supra at 669-70.

The Court's holding was premised upon the Sherman Act, as well as on the

recognition that one's right to petition the Government is a fundamental exercise of

First Amendment freedoms.   The immunity from antitrust litigation, that is

encompassed by the <u>Noerr-Pennington</u> doctrine, has been extended to other forms of

governmental interaction, including administrative and judicial proceedings.  See, e.g.,

-15-

California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972); City of Columbia v. Omni Outdoor Advertising, Inc., 499 U.S. 365, 378 (1991).

Here, the primary dispute among the parties is whether the Noerr-Pennington doctrine protects the conduct of the Plaintiff, in transmitting the demand letters to the Defendants' Marketers.   In resolving this issue, the Defendants urge us to adopt the reasoning of the Court of Appeals for the Tenth Circuit, in Cardtoons, L.C. v. Major League Baseball Players Association, 208 F.3d 885 (10th Cir. 2000), cert. denied, 531 U.S. 873 (2000), where the Court held that a cease and desist letter, from one private party to another, was not protected under the Noerr-Pennington doctrine and, as a result, the sender of the letter could be held liable for tortious interference with a contract.

In so holding, the Court engaged in a thorough analysis of the Noerr-Pennington doctrine, and found that, because the Noerr-Pennington doctrine arose out of an interpretation of the Sherman Act, it was limited to antitrust litigation.   As such, the Court noted that, to the extent that the doctrine could be read to extend beyond the context of an antitrust claim, its grant of immunity is limited to that afforded by the right to petition under the First Amendment.   Id. at 889.   Specifically, the Court reasoned, as follows:

> While we do not question the application of the right to petition outside of antitrust, it is a bit of a misnomer to refer to it as the Noerr-Pennington doctrine; a doctrine which was based on two rationales.  In our view, it is more appropriate to refer to immunity as Noerr-Pennington immunity only when applied to antitrust claims.  In all other contexts, including the present one, such immunity derives from the right to petition.

Id. at 889-890.

The Court went on to hold that, since the "right to petition is not an absolute protection from liability," id. at 891, "a letter from one private party to another private party simply does not implicate the right to petition, regardless of what the letter threatens."  Id. at 892.

At first blush, it appears that the analysis adopted by the Court, in Cardtoons, is contrary to the law of this Circuit, which has expressly held that the Noerr-Pennington doctrine may be applied to immunize an individual from tort liability. See, Hufsmith v. Weaver, 817 F.2d 455, 458-59 (8th Cir. 1987); Central Telecommunications, Inc. v. TCI Cablevision, Inc., 800 F.2d 711, 718 n. 7 (8th Cir. 1986); In re: IBP Confidential Business Documents Litigation, 755 F.2d 1300, 1312 (8th Cir. 1985); First National Bank v. Marquette National Bank, 482 F. Supp. 514, 524-25 (D. Minn. 1979), aff'd, 636 F.2d 195, 197 (8th Cir. 1980), cert. denied, 450 U.S. 1042 (1981).  However, a review of those cases discloses that, outside of the

-17-

antitrust context, the <u>Noerr-Pennington</u> doctrine has not been applied to extend beyond the right to petition the Government.

Notably, the Court's discussion of the <u>Noerr-Pennington</u> doctrine, in <u>In re: IBP Confidential Business Documents Litigation</u>, supra at 1312, offers nothing to suggest that the doctrine extends to conduct that falls outside of "petitioning activity," or "genuine attempts to influence government policy," as the Court prefaced its discussion of the limitations of the doctrine, by discussing the limitations on the protections afforded by the First Amendment. <u>Id.</u> at 1312. Similarly, in <u>Hufsmith v. Weaver</u>, supra at 458, the Court began its analysis by noting that the basis for <u>Noerr-Pennington</u> doctrine was "the first amendment's guarantee of the right to petition the government." <u>Id.</u>, citing <u>California Motor Transport Co. v. Trucking Unlimited</u>, supra.

As a result, we find no inconsistencies between the analysis in <u>Cardtoons</u> -- that <u>Noerr-Pennington</u> immunity, outside of the antitrust context, is limited to the right to petition -- and the application of the <u>Noerr-Pennington</u> doctrine, by our Court of Appeals, to claims that fall outside of the antitrust context. See, <u>Keystone Retaining Wall Systems, Inc. v. Rockwood Retaining Walls, Inc.</u>, 2001 WL 951582 , at *11 (D. Minn., August 22, 2001)("The [Noerr-Pennington] doctrine has been extended to

include cases outside the antitrust context based solely on the First Amendment right to petition the government."), citing <u>Hufsmith v. Weaver</u>, supra at 458-59; see, e.g., <u>Gorman Towers v. Bogoslavsky</u>, 626 F.2d 607, 614 (8th Cir. 1980)(citing <u>Noerr</u> for the proposition that the right to petition immunized the lobbying efforts of private individuals for an unconstitutional zoning amendment  from liability, under Title 42 U.S.C. §1983).

Accordingly, we follow the lead of the District Court, in <u>Keystone Retaining Wall Systems, Inc. v. Rockwood Retaining Walls, Inc.</u>, supra at *11, which found the reasoning in <u>Cardtoons's</u> to be "persuasive."  Like the Court in <u>Keystone</u>, we also find that, given the limited scope of the right to petition, "not [every] letter sent to a third party which is ancillary to litigation is immune from tort claims by virtue of the <u>Noerr-Pennington</u> doctrine."  <u>Id.</u> at *9; see, <u>Direct TV, Inc. v. Cavanaugh</u>, 321 F. Supp.2d 821, 845 (E.D. Mich. 2003)(cease and desist letters which threatened litigation under the Electronic Communications Privacy Act for the possession of signal theft devices were not privileged under the right to petition).

The Court's analysis, in <u>Keystone</u>, is also instructive to our analysis in another respect.  There, the plaintiff, who was a manufacturer of a specific type of retaining wall block, commenced a suit against another manufacturer, alleging patent

infringement.  In conjunction with that suit, the patentee transmitted cease and desist

letters to the authorized dealers of the defendant, which threatened litigation if the

dealers continued to infringe on the patent.  The defendant counterclaimed, alleging

that, in transmitting cease and desist letters to its dealers, the patentee had tortiously

interfered with its existing and prospective business relations.  The plaintiff moved for

Summary Judgment on the counterclaim, contending that the cease and desist letters

were protected under the Noerr-Pennington doctrine.

While the Court, in Keystone, was persuaded by the reasoning of the Tenth

Circuit Court of Appeals, in Cardtoons,  it ultimately held that, under patent law, the

Noerr-Pennington doctrine immunizes a patentee's cease and desist letters, explaining

as follows:

> [U]nlike the facts presented in Cardtoons, the instant case
> involves cease and desist letters that are required under the
> statute in order for a patentee to recover damages for
> infringement.  Section 287 of Title 35 of the United States
> Code requires that an alleged infringer have notice of the
> patent before it can be held liable for infringement.  [The
> patentee's] stones are not marked as patented due to the
> expense of marking each stone; therefore, [the patentee]
> must notify the alleged infringer of its patent in order to
> recover damages.  Accordingly, unlike Cardtoons, where
> the letters threatening litigation were not required, the notice
> requirements of 35 U.S.C. §287 put [the patentee's] actions

> within the ambit of immunized activity under the Noerr-
> Pennington doctrine.

Id., at *11.

Addressing a substantially similar issue, the Court, in Versatile Plastics, Inc. v. Sknowbest! Inc., 247 F. Supp.2d 1098, 1104-1105 (E.D. Wis. 2003), also held that a patentee's cease and desist letters were immune from suit, under the Noerr-Pennington doctrine.   In so holding, the Court expounded on the reasoning of the Court, in Keystone, observing as follows:

> [I]n the sense that the patent laws explicitly sanction and
> require notice letters to be sent in some situations, these
> letters cannot be seen as "purely private threats" outside the
> realm of the right to petition the government. Cardtoons,
> 208 F.3d at 886.   They are more properly described as
> actions taken by patent owners as a step in securing their
> rights in the event of future litigation. As such, such letters
> are "reasonably and normally attendant upon protected
> litigation."

The holdings in Keystone, and Versatile, demonstrate that a litigant may be entitled to Noerr-Pennington tort immunity, in the transmission of cease and desist letters, so long as the communication is sanctioned by law, as a condition precedent to securing rights in future litigation.

Following this line of reasoning, the Plaintiff analogizes the notice provision, that was identified in <u>Keystone</u>, with Title 17 U.S.C. §504(c)(2), which governs the recovery of damages for willful copyright violations, and which provides as follows:

> In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000. In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200.

By comparison, Title 35 U.S.C. §287 provides that patentees "may give notice to the public [of the patented article]," and then describes the methods upon which such notice may be effected. Section 287 goes on to provide that, "[i]n the event of a failure to so mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter."

A close comparison of the two statutes discloses that Section 504(c)(2) is distinguishable from Section 287 in the important respect that the patent holder is expressly afforded the right to give notice of its patent, and a copyright holder, unlike

the patent holder, may still recover some damages, in the absence of proof that the

infringer was notified of the infringement.   Compare, <u>Title 17 U.S.C. §504(c)(1) and

(c)(2)</u> with <u>Title 35 U.S.C. §287</u>.   However, a plain reading of Section 504(c)(2) makes

clear that the amount of damages, which a copyright holder may recover, significantly

increases upon a showing of willfulness, and that a Court may reduce the statutory

damages to a sum of not less than $200.00, in the event that the infringing party can

establish that it was unaware of the infringement.   See, <u>Cass County Music Co. v.

C.H.L.R., Inc.</u>, 88 F.3d 635, 637 (8th Cir. 1996).   Accordingly, like Section 287,

Section 504(c)(2) imposes significant consequences on a copyright holder, when

infringement is either innocent, or when the infringing party can establish that it was

unaware of the infringement.

Unquestionably, a copyright holder's notice to an infringer is relevant to

determining whether an infringement is willful.  <u>Cass County Music Co. v. C.H.L.R.,

Inc.</u>, supra at 637, citing <u>Chi-Boy Music v. Charlie's Club, Inc.</u>, 930 F.2d 1224, 1227-

28 (7th Cir. 1991)("[E]vidence that notice had been accorded to the alleged infringer

* * * is perhaps the most persuasive evidence of willfulness."), quoting, in turn, <u>Video

View, Inc. v. Studio 21</u>, 925 F.2d 1010, 1021 (7th Cir. 1991); see, <u>Tempo Music, Inc.

v. Christenson Food & Mercantile, Inc.</u>, 806 F. Supp. 816, 820 (D. Minn.

1992)("[N]otice constitutes knowing and not innocent, infringement."). "A letter informing the defendants of possible infringement clearly provides notice." <u>Wildlife Express Corp. v. Carol Wright Sales, Inc.</u>, 18 F.3d 502, 512 (7th Cir. 1994), citing <u>Chi-Boy Music v. Charlie's Club, Inc.</u>, supra at 1228; see <u>Tempo Music, Inc. v. Christenson Food & Mercantile, Inc.</u>, supra at 820 (finding that letters, telephone calls, and personal visits to infringer provided notice).

In recognition of the potential consequences, which are associated with a copyright holder's failure to provide notice to an infringer, we are satisfied that Section 504(c), like Section 287, sanctions the use of cease and desist letters to provide notice of infringement to a copyright infringer. Cf., <u>Versatile Plastics, Inc. v. Sknowbest!, Inc.</u>, supra at 1104-5.

The Defendants have also urged that the <u>Noerr-Pennington</u> doctrine is inapplicable because the present case falls under the "sham" exception. This exception is narrow, and only applies in those instances where a suit is: 1) objectively meritless; and 2) subjectively motivated by bad faith. <u>Keystone Retaining Wall Systems v. Rockwood Retaining Walls, Inc.</u>, supra at 11, citing <u>Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.</u>, 508 U.S. 49, 61-62 (1993). The two parts of the test operate in succession, such that we need only proceed to the

litigant's subjective intent, if the suit is found to be objectively baseless.   Professional

Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc., supra at 62; USS-

Posco Indust. v. Contra Costa Cty. Bldg. & Const., 31 F.3d 800, 811 (9th Cir. 1994),

citing Liberty Lake Investments, Inc. v. Magnuson, 12 F.3d 155, 158, 159 (9th Cir.

1993); Carroll Touch, Inc. v. Electro Mechanical Systems, Inc., 15 F.3d 1573, 1583,

n. 10 (Fed. Cir. 1993); Fischer Sand and Aggregate v. City of Lakeville, 874 F. Supp.

957, 959-60 (D. Minn. 1994).

Here, the Defendants have not alleged that the Plaintiff's copyright infringement

action is "objectively meritless," or that the Plaintiff's decision to bring the suit was

an act of "bad faith," but they have alleged that the Plaintiff's assertedly tortious acts

of interference were "without justification."   Unlike the circumstances in Keystone,

where the Court had adjudicated the patent as having been valid, before reaching the

Noerr-Pennington question, we have no means of knowing, at this stage, whether the

Plaintiff had a justifiable basis to send the threatening letters.   Once again, the

Plaintiff's Motion to Dismiss implicitly asks that we presume facts adverse to the

Defendants' allegations; namely, that the copyrights were not only valid, but were

infringed by the Defendants' products.   Unlike both Kemp, and Keystone, no such

adjudication, as to the validity of the copyright infringement claims, has yet been made.

While we agree with the Plaintiff, that the Defendants have not alleged, much less proven, that the threatening letters were a "sham," we need not go so far, as the Defendants' claims, which the Plaintiff now seeks to dismiss, elude dismissal on independent grounds.

Although the parties have focused their attention on the cease and desist letters, we cannot ignore the Defendants' allegation, "upon information and belief," that the Plaintiff "communicated with some or all of [the Defendants'] Marketers," and that "these communications included disparaging remarks about [the Defendants] beyond the scope of Iron Stop's allegedly infringing 'Wind Spinners.'"  Counterclaim, at ¶5. Assuming such allegations to be true, as we must, we find that the Plaintiff is not entitled to Noerr-Pennington immunity -- as such conduct exceeds the right of a copyright holder to provide notice of infringement, which is sanctioned by Section 504(c) -- and the Defendants must be allowed to proceed with their Counterclaim, notwithstanding the Noerr-Pennington doctrine.  Therefore, we recommend that the Plaintiff's Motion to Dismiss the Defendant's Counterclaims be denied.[2]

---

[2]Since we recommend that the Plaintiff's Motion to Dismiss be denied, we need not address the Defendants' request that any dismissal be without prejudice, in order that they may be afforded an opportunity to plead facts that would be sufficient to
(continued...)

NOW, THEREFORE, It is –

RECOMMENDED:

That the Plaintiff's Motion to Dismiss the Defendants' Counterclaims [Docket No. 26] be denied.


Dated:  January 26, 2006              s/Raymond L. Erickson
                                       Raymond L. Erickson
                                       CHIEF U.S. MAGISTRATE JUDGE

### NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than February 10, 2006,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

---

[2](...continued)
raise the "sham" litigation exception.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than February 10, 2006,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.